JjCOOKS, Judge.
J.C., a minor through his appointed representative, has appealed a lower court ruling finding him ungovernable as defined by La.Ch.Code art. 730(2), and ordering his placement with the Department of Public Safety and Corrections, Office of Youth Development, until his eighteenth birthday.[1] For the following reasons, we vacate and set aside the child’s commitment and remand for re-disposition.
FACTS
On May 5, 2000, a Petition for Families in Need of Services was filed in this matter, alleging J.C. is ungovernable. After a hearing, the trial judge agreed and adjudicated J.C. “a member of a family in need of services” as provided by La.Ch.Code art. 771. Counsel for J.C. orally moved and was granted delay to interview and present evidence at a subsequent disposition hearing as required by La. Ch.Code art. 777.
At the Disposition Hearing, the State presented the testimony of Paula Montgomery, the principal of Hopkins Street Elementary School. Montgomery testified J.C. was a second grader at Hopkins for approximately six weeks. As examples of his behavior problems, she noted he did not pay attention, follow directions, left class without permission, hid underneath a building, engaged in fights with other students, and grabbed a girl causing her head to hit a wall. Montgomery also testified that while J.C. was in her office, he grabbed a pair of scissors and lunged at her.
J.C. eventually was re-assigned by Montgomery to a program for students with behavior disorders. Ann Verret, the administrator of the program, testified J.C. was enrolled in the program from September, 1999, through March, 2000, until, as | ¡¡she testified, “it became necessary to put him on a Homebound placement because we were unable to maintain him on the campus.” During his assignment to the program, J.C. was suspended four times for physically striking others, including his teachers. Ms. Verret testified she worked extra with J.C. to maintain him on campus, but was unsuccessful. By March, 2000, J.C. was placed on Homebound instruction. This consisted of twice weekly *1268 meetings with an instructor at home for ninety minutes.
J.C.’s mother testified she has eight children, ranging in ages from fifteen-years-old to one-year-old. She acknowledged J.C. has displayed behavior and discipline problems, noting he often engages in fights with neighborhood children. Although the mother gave J.C. prescribed medication in the morning to treat his hyperactive condition, she did not provide any for the school nurse to administer during the hours he was away from home and the school did not request that she do so.
Dr. Juban Atwi, a pediatrician, examined J.C. in October, 1996 and diagnosed he was suffering from hyperactivity. He prescribed Ritalin to treat J.C.’s condition. In September, 1999, Dr. Atwi changed J.C.’s medication from Ritalin to Atarol. Although Dr. Atwi increased the' Atarol dosage to the maximum allowed, J.C. continued to exhibit severe behavioral problem. By March, 2000, Dr. Atwi decided to refer J.C. to a psychiatrist. Dr. Atwi testified at the time of the referral, the mental health clinic was not taking Medicaid patients until April at the earliest. Dr. Atwi has not treated J.C. since March, 2000 and did not know if the mental health evaluation took place.
Following the testimony of the witnesses, the trial court ordered placement of J.C. with the Department of Corrections until the age of eighteen. The following colloquy took place between the trial court and the attorneys:
|J3Y THE COURT:
The recommendation is for a secure facility. I don’t know what kind of facility we need here. I’m convinced that we’re not going in the right direction with what we have now. His behavior has escalated at school to the point where the school system is no longer providing the services. He is at home and we’re not getting anywhere there either. I don’t consider Homebound a real education. He’s maxed out on the medicine, but I don’t know what kind of facility we have available for him. ■
BY MRS. BURTON (COUNSEL FOR J.C.):
Judge, as you heard the Doctor testify, when he figured out that the medication was not working, he recommended him to the mental health clinic.
BY THE COURT:
And that was March and we are now at the end of June. So where do we get the service he needs?
BY MRS. BURTON:
I think we need to start with the clinic. Because of the fact that they wouldn’t take him, that’s not a problem of the parents.
BY THE COURT:
Yeah, but we can’t let the child languish with no services.
BY MR. ELIAS (COUNSEL FOR THE STATE):
Your Honor, the State’s position is that this juvenile needs to be placed in an in-patient psychiatric facility which is available through the State.
BY THE COURT:
We’re not talking about a detention or a — I think detention or LTI, that kind of thing, is inappropriate.
BY MR. ELIAS:
If there had been a criminal act, Your Honor, certainly we would look at that.
BY THE COURT:
Well, we probably do have some criminal acts but, because of the heavy mental health behavior problem overlay and because of his age, [4we need some kind of treatment facility. If we are able to find an appropriate treatment facility, believe me, it won’t last long because they just can’t wait to do what they can and release him. So I don’t think mother should fear the placement. Maybe fear that they won’t keep him long enough to do him some good would be a better placed amount of fear. Just to resist the placement on the general prin *1269 ciples of keeping him home I don’t think is appropriate because we’re not getting from here to there right now, is what I’m saying. I don’t think it’s in the child’s best interests to maintain what’s happening right now.
Do we have a place for him for appropriate psychological treatment?
BY MR. ELIAS:
My experience is, and Mr. Jones can correct me if I’m wrong, is that before any placement would take place, they’re going to psyehiatrically evaluate him anyway to see what would be appropriate for his age group, for his mentality, and whatever. I think based upon that, they would find the appropriate placement.
BY THE COURT:
Then all I’m being asked today is say placement or non-placement. In that case, I don’t find that the direction we’re going in right now is servicing this child appropriately, and I will order placement.
BY MR. ELIAS:
For the minutes, Your Honor, that he be committed to the Department of Corrections?
BY THE COURT:
Department of Corrections for placement.
BY MR. ELIAS:
Until his eighteenth birthday?
BY MRS. BURTON:
Your, Honor, I’m going to object. He’s only nine.
BY THE COURT:
We don’t know. I’m going to say placement until recommended release. Even though we say eighteen, we’re saying the State has to provide services whether in placement or at home until he’s eighteen. I want for that reason. We’re not saying placement until eighteen.
JjjBY MRS. BURTON:
You’re saying DOC until eighteen.
BY THE COURT:
DOC until eighteen, but immediate placement now. I want to make sure somebody’s worrying about his services until he’s eighteen.
ANALYSIS
Counsel for J.C. argues the trial court erred in ordering removal of the child without determining whether reasonable efforts were made by public institutions or agencies to prevent his removal. We agree. La. Ch. Code art. 780 provides in pertinent part:
A. The court shall not remove a child from the custody of his caretakers unless his welfare cannot, in the opinion of the court, be adequately safeguarded without such removal.
B. In support of any disposition removing a child from the caretaker’s home, the court shall determine whether reasonable efforts have been made by public institutions and agencies to prevent or eliminate the need for removal of the child from his home and, after removal, to make it possible for the child to return home. .
The record does not indicate that J.C.was examined by a psychiatrist as recommended by Dr. Atwi. Counsel for the State acknowledges in his brief that a child’s removal from the family home is warranted “[o]nly in those instances where no positive solution is apparent to address the existing problems and then only as a last resort ...” La.Ch.Code art. 781(A) requires the trial court “impose the least restrictive disposition which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society.” (Emphasis Added) The State contends placement of J.C. in a non-secured juvenile group facility is necessary in this instance.
We understand and the record convincingly shows J.C. is a troubled child; and, he may yet require placement in a state facility. But the time has not come to *1270 | ^remove him from the only home he knows and confine him with strangers until he reaches adulthood. J.C. has not been convicted of committing any crime and he has never been adjudicated a delinquent. At the time the trial judge opted to permanently place the child, he was only nine years old. After carefully reviewing the evidence, we find permanent placement of the child at this stage is premature because a recommended medical alternative has not been exhausted — the child has not
been examined and treated by a psychiatrist.
COMMITMENT VACATED; REMANDED FOR RE DISPOSITION CONSISTENT WITH THIS OPINION.

. To preserve the minor’s confidentiality, we have used initials as required by Uniform Rule, Court of Appeal, 5,2.